```
1  Linda M. Battram, State Bar No. 135073
   LAW OFFICES OF LINDA M. BATTRAM
2  140 West Foothill Blvd., Suite B
   Claremont, CA 91711
3  Phone (909) 445-1010
   Fax (909) 445-1012
4  Attorney for Non-Parties David and Kathy Stonebreaker
```

FILED
JAN 30 2012
CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PAMELA STONEBREAKER, an individual, <br><br>        Plaintiff, <br><br>    v. <br><br> THE GUARDIAN LIFE INSURANCE COMPANY OF AMERICA, a corporation; WESTERN RESERVE LIFE ASSURANCE COMPANY OF OHIO, a corporation, UNION SECURITY INSURANCE COMPANY, a corporation, and Does 1-100, inclusive, <br><br>        Defendants. <br><br> WESTERN RESERVE LIFE ASSURANCE CO. OF OHIO, a corporation, <br><br>        Counterclaimant and Third-Party Plaintiff, <br><br>    vs. <br><br> PAMELA STONEBREAKER, an individual, and ROE ONE, as executor of THE ESTATE OF ROBERT STONEBREAKER, and ROES 2-10, inclusive, <br><br>        Counter-Defendant and Third Party Defendants. | CASE NO. 3:11-CV-00797-WQH-WVG <br><br> Hon. William Q. Hayes <br><br> **NOTICE OF APPLICATION AND APPLICATION FOR LEAVE TO FILE EX PARTE MOTION [Local Rules, Civil Rule 5.1(h)]** <br><br> **MOTION TO QUASH SUBPOENAE OR IN THE ALTERNATIVE, FOR PROTECTIVE ORDER, OR BOTH [FRCP Rule26; Rule 45(c)(1); (3)(iii), and (3)(iv)]** <br><br> **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION** <br><br> **CERTIFICATION OF GOOD FAITH EFFORT TO MEET AND CONFER** <br><br> Originally San Diego County Superior Court <br><br> Case No. 37-2011-00087721-CU-CO-CTL <br><br> Action Filed: March 16, 2011 |

1 To the Court and the Parties, and to their attorneys of record:

2 **PLEASE TAKE NOTICE:**

3 May it please the Court, Non-Parties David Stonebreaker and Kathy Stonebreaker,

4 hereby apply for Leave under **Local Rules, Civil Rule 5.1(h)**, to file a Motion to Quash the

5 Subpoena of Kathy Stonebreaker (**Exhibit 1**, which contains 40 compound document requests),

6 and to Quash the Subpoena of David Stonebreaker (**Exhibit 2**, also containing 40 compound

7 document requests) and/or for Protective Order limiting the testimony and documents to

8 communications with counsel for Defendants/Cross-Complainants and to accept testimony

9 contained in the Declarations of David Stonebreaker (**Exhibit 3**) and Kathy Stonebreaker

10 (**Exhibit 4**).

11     The Motion is brought *ex parte* in that the depositions are currently set for February 1

12 and 2, having been noticed via fax and mail on January 20, 2012 in lieu of a Motion to Compel

13 Plaintiff's counsel had indicated it would file.

14     The Motion to Quash is based upon **Rule 45(c)(1); (3)(iii), and (3)(iv)** and the Motion

15 for Protective Order is based upon **FRCP Rule26(c)(1)-(3),** and the following:

16 1.   The Subpoenae of deposition testimony and documents are vexatious, intended to harass

17     and retaliate against David and Kathy Stonebreaker because they are not convinced that

18     Pamela Stonebreaker is innocent in the murder of Robert Stonebreaker;

19 2.   The subpoenae are overly burdensome and embarrassing for David and Kathy

20     Stonebreaker in that Plaintiff subjects them to never-before expressed criticism of the

21     way they raised with their daughter, to reveal private information about their daughter,

22     and seeks which is irrelevant to any issue in the pending litigation with Pamela

23     Stonebreaker's insurance companies.

24 3.   The Subpoenae demands violate the rights of privacy of Moving Parties', Kenneth

25     Stonebreaker and Janna Stonebreaker, all non-parties.

26 5.   The discovery is irrelevant to any credible issue in Plaintiff's claim of duty to investigate

27     and emotional distress damages since Kathy Stonebreaker never applied as Guardian Ad

28

1  Litem nor Special Administrator and Pamela seeks to learn negative information after
2  the Petition for Guardian Ad Litem was Noticed, heard, and denied.

3  6. The Protective Order is sought alternatively to limit the subject and means of discovery,
4  to that which has already been produced, documents and declarations previously submitted to
5  opposing counsel.

6  7. The parties have engaged in good faith efforts to resolve their disputes to no avail.
7  Movants have supplied information, documents, and declarations, to the extent not privileged
8  without waiving relevancy objections, and other objections in an effort to aid the Court in its
9  decision making.

10  The Motion will be based upon this Notice, the attached Memorandum of Points and
11  Authorities, the Exhibits filed in support of the Motion, such further evidence as may be made
12  known and submittable before a ruling is made in this matter, upon oral argument if requested
13  by the Court, and upon the files and records herein.

14  DATED: January 27, 2011                     LAW OFFICES OF LINDA M. BATTRAM

15                                              /s/ Linda M. Battram
                                                Linda M. Battram, Esq.
16                                              Attorney for David and Kathy Stonebreaker

# MEMORANDUM OF POINTS AND AUTHORITIES

## I

## STATEMENT OF FACTS

**A. Parties and Mentioned Persons:**

Plaintiff Pamela Stonebreaker (hereinafter referred to as "Pamela" or 'Plaintiff") was married to Dr. Robert Stonebreaker, deceased, (hereinafter referred to as "Robert") until Robert was murdered on or about January 17, 2010.

David Stonebreaker, (hereinafter referred to as "David") moving party, is the brother of Robert, married to moving party, Kathy Stonebreaker, (hereinafter referred to as "Kathy"). David and Kathy live in San Bernardino County, collectively referred to as "Movants", are non-parties. Movants are Co-Conservators for Kenneth Stonebreaker.

David and Kathy have three adult daughters. The youngest is Janna Stonebreaker, who currently lives in Arizona.

Kelli, Ryan, and Kristen (Stonebreaker) are Pamela and Robert's minor children.

Robert and David's father is Kenneth Stonebreaker (hereinafter referred to as "Kenneth").

Frances Stonebreaker (hereinafter referred to as "Frances") is the mother of Robert and David.

**B. Background:**

On or about January 17, 2010, Dr. Robert Stonebreaker, a veterinarian, was away from home all night, found dead the next morning, and his death ruled a homicide.

David and Kathy shocked at the murder of David's brother, were concerned for Pamela and for his children, Kelli, Ryan, and Kristen, and even more so when they learned that Pamela was a suspect in the homicide. David and Kathy, on January 19, 2012, learned from new detectives assigned to the murder case that Pamela is still not cleared in the murder of Robert. **Exh. 3, David Decl., p. 26-27, para.s 18-19.** Plaintiff seeks to discover all communications with law enforcement. **Exh.s 1 and 2, pp. 5-6, 16-17, the subject Subpoenae Doc. Request No.s 13, 14 and 16.**

David, distraught over the murder of his brother Robert, has expressed his feelings and distress over the fact that enormous amounts of money and effort have been spent on Pamela's rights to inherit Robert's share of the community property and insurance benefits, compared to efforts to locate and apprehend the murderer. David is not convinced that Pamela is innocent, nor is he convinced she is guilty, and his only intent in starting a reward fund (which only drew in $550.00) is to bring justice for the murder of his brother. **Ex 3: 26, para. 18 ; Ex. 4: 28. para. 3.** Plaintiff seeks to discover all the banking information and the identity of donors, distributees (there are none), and all about this fund. **Exh.s 1 and 2, pp. 7 and 18 respectively, Requests No. 31.**

Kathy does not know whether Pamela is guilty or innocent, and is very worried for her nieces and nephews. [**Exh. 8, Pamela Deposition, pp. 73-90 Excerpts; Exh. 3, p. 28. Para. 3**]. Plaintiff seeks to discover all family photos of Kelli, Kristen, and Ryan, phone records and all documents regarding communications between Kathy and Pamela's children, and others. **Exh.s 1 and 2, pp. 4 and 15 respectively, Requests No. 1.**

On or about June 2011, David was contacted by attorneys claiming to represent Robert's insurance company, after which David applied to be Guardian Ad Litem in the instant action for the children learning that Pamela could not serve due to a "Slayer Statute", [**Cal. Probate Code Sections 250-259**] and also as Administrator in the related probate matter (case No. 37-2011-00180275). **Ex. 3:23, para.s 4-5.** Plaintiff seeks to discover all communications with Robert's insurers and their attorneys. Movants do not object on relevance grounds and would voluntarily produce anything not previously produced. **Exh.s 1 and 2, pp. 5 and 16, respectively, Requests No. 8-12.**

David submitted a Petition for Guardian Ad Litem, and Pamela objected because she preferred her sister and not because of the type of parent David and Kathy were to their daughters, nor the way David cares for his father. David was not appointed Guardian Ad Litem, and the Honorable Cowitt, Ret., was so appointed. **Ex.3:23, para. 6.** Plaintiff seeks to discover negative employment information, to depose Kathy, to discover all the conservatorship documents regarding Kenneth, education records, medical records, police and child protective services records for Kathy

1  and David, personal letters between Janna and her parents. **Exh.s 1 and 2, pp. 1-22.**

2  Pamela never objected to David's serving, and Robert encouraged David, to serve as the Conservator of Kenneth with Kathy. Dave and Kathy continue to serve in this capacity, with all the attendant oversight via accounting, investigator and court reviews. **Ex. 3: 24, para. 7.**

Kathy and David view their relationship with Robert and Pamela, before the murder, as just fine. Pamela had intimated to Kathy that she wanted to divorce Robert. Kathy was not previously aware of the small number of past family interactions Pamela now criticizes her deposition, hinting and insinuating, going as far as to call Kathy "almost creepy" due to Kathy's determinedly concerned communications with her niece, Kristen, and that David and Kathy come with "baggage" according to her lawyer. **Ex. 3:23, para. 6; Ex. 4:30, para. 11; Ex. 8:82, 87.**

Kathy and David suffer greatly and are deeply troubled that Plaintiff is using Janna for information, which the Stonebreakers know is false, fabricated, and the subject of a prior decision in the State Court in Kathy's favor – using Janna to justify the subject discovery. **Exh. 3, David Decl., pp 25-26, para.s 11, 12, 13, and 14; Exh. 4, Kathy Decl., pp. 29-30, para. 9, 10, 11, 13, 17.** Plaintiff requests Janna's school records, boot camp records (none exist) **Exh.s 1 and 2, pp. 4-5, and 15-16 respectively, Requests No. 2-7.**

Janna's problems with telling whoppers were made known when she made up and repeated for years that her grandmother Frances, "killed a man named Harry Evans and put his body in the freezer in the barn". Harry Evans had in fact died. **Exh. 4, Kathy Decl., p. 30, 15-16, para. 17.** Janna at one time had chased her sister with a knife, stabbed at her sister's bedroom door, damaging it, showing no remorse, such incident creating police reports and part of the reason for placing her out of the home. **Exh. 3, David Decl., p. 24, para. 10.**

Plaintiff's interest as communicated to Movants and their counsel in deposing Kathy and David is largely based upon Janna's made up story that Kathy threw boiling water on the back of David. Nathan Arrington advised that he intended to force David to take off his shirt and show his naked back if David denied this story. **Ex. 3:25, para. 13; Ex.s 5e:43 and 5f;47.** However, as Exhibits 3 and 5f reveal, David (and Kathy) have already submitted a declaration under penalty

---

MEMORANDUM OF POINTS re: MOTION TO QUASH/PROTECTIVE ORDER

3

3:11-CV-00797

of perjury to Plaintiff's counsel's office giving the rather embarrassing details of how this was an accident. There is nothing more to say about it, and David asserts that his medical records are private. **Exh.s 1 and 2, pp. 5 and 16, respectively, Requests No. 7.**

C. <u>Procedural Background</u>:

David and Kathy previously responded to the discovery requests on October 19, of 2011, objecting on the grounds of relevance, and producing some of the documents requested. **Ex. 9:91-108.** is their response.

Plaintiff served (on 10/20/11) a subpoena at Kathy's place of employment, the Claremont Unified School District. A true and correct copy of this subpoena is attached as **Ex. 6:57-65.** Kathy was given a copy by the School District, without a proof of service. **Ex. 3:28, para. 3.**

Before that, Plaintiff on 9-30-11 served a subpoena on Certified Federal Credit Union requesting records for the Robert Stonebreaker Reward Fund **[Ex: 7:66-72]**. Therefore, Plaintiff knows that no disbursements of the funds have been made, and that the fund is $550.00. **Exh 3:27, para.s 19 and 20.**

Sometime during the first week of January or so, Honorable Judge Gallo's clerk, Mark, called to advise the undersigned counsel that Plaintiff intended to file a Motion to Compel. **Battram Dec. Para. 2, attached.** However, no motion was forthcoming.

Instead, Counsel was served with the subject subpoena January 20, 2012. Current counsel began helping Kathy and David during October of 2011 (who was unavailable during a period of time when her mother passed away October 29, 2012). David and Kathy were personally served with the subject subpoenae at their home January 28, 2012.

## II

### OBJECTIONS TO DOCUMENT PRODUCTION

Movants have cooperated in stating in their declarations, [**Ex. 3:27, para. 21-22, Ex 4:31 Para.s. 20-21**] Documents Requests Numbers 18, 24, 31, 32, 33, 34, 36, 37, 38, and 40 never existed.

Movants have documents responsive to Request Numbers 1, 2, 3, 5, 6, 7, 8, 9, 10, 14, 15,

16, 17, 22, 23, 26, 27. Other than the bank records associated with the Reward Fund, Movants claim these documents require production of documents which are privileged financial records, and medical records, privileged and voluminous insofar as Kenneth's file, voluminous and irrelevant and private letters from Janna, private medical records and education records concerning Janna, **[FRE §1010.5. 1012**, and Movants are not holders of the privilege **[FRE §1013]**. and marital communications privileged pursuant to **FRE §980.**

Furthermore, they lack relevance to the investigation into whether Pamela suffered severe emotional distress when Robert applied and failed at serving as Guardian Ad Litem in this case, nor to whether Pamela is innocent or guilty and prevented from inheriting and serving as Guardian Ad Litem, nor to whether Defendants should have suggested David apply for this role, since their interest is in paying the insurance, but avoiding paying a "Slayer". As such, the discovery is vexatious.

The time and cost of finding and reproducing these records (and testifying about them) is expensive, time consuming, and unduly burdensome.

Insofar as Documents Request No. 6, police records are equally available to Plaintiff, but no other of the requested documents ever existed. Insofar as Documents Request No. 7, some never existed, some do some were already sent to Plaintiff, and Plaintiffs sent declarations to Plaintiff's counsel advising him that no restraining order was issued, so why do Movants have to respond to a request for copies of the orders being sent to educational institutions? Since Kathy works at one, and Plaintiff subpoenaed her workplace records, this is harassment.

Insofar as Documents Request Numbers 8-12, such documents are equally available and/or already in the possession of Plaintiff or do not exist. Insofar as Documents Request No. 14, Plaintiff already has possession of any such documents. Insofar as Insofar as Documents Request Numbers 13, 14, 21, 25, 26, 29, 30, and 35, such documents may or do exist, but are not in our possession. The expense and time in obtaining phone records which show the fact of the calls is irrelevant since no argues calls were not made when they were.

No. 20 is overbroad and appears to be a duplicate of 21., but otherwise is so overbroad that

it violates **FRE §952.** There are medical records associated with No. 24, but Plaintiffs claim these are private. **FRE §994.**

### III.

### ARGUMENT

At issue in this matter appears to be whether Plaintiff is guilty of murdering her husband, and therefore not entitled to inherit or to serve as trustee nor caretaker for her children.

Kathy and David do not necessarily believe that Pamela is innocent in the death of Robert. They do not know she is guilty, either. The answer to this question does not lie in their hands.

The subject discovery appears to be harassment and vexatious because Kathy and David have doubts about the innocence and guilt of Pamela. Pamela refused to discuss the death of Robert with Movants, and while she is entitled to do so, Movants are also entitled to their view.

If Pamela truly objected or was emotionally distraught over David's Petition for Guardian Ad Litem because of what she characterizes as "baggage" and Kathy's "almost creepy" efforts to (despite Pamela's efforts to block them) maintain her relationship with Kristen, she would have objected at the time she was given Notice of the Petition on those grounds. She did not.

The procedure for Petitioning for Guardian Ad Litem includes giving Notice, the purpose which is to allow objections and to qualify the Petitioner. David was not appointed anyway. Digging into his past or even his current affairs is a moot point, and irrelevant.

Secondly, Plaintiff claims her insurance company should have investigated David before suggesting he apply for these positions, and if they had, they would have learned what "low caliber" a person David is, and apparently Kathy is thrown in to increase the "baggage".

Neither theory holds water. The first theory appears to lack merit because Plaintiff could not have been severely emotionally distressed at learning of David's Petition for Guardian Ad Litem, by things she is learning after the fact.

However, using Kathy and David's disturbed and delusional daughter Janna, delving into her past, having her recount a boiling water accident which has already been explained to Plaintiff via declarations and documents submitted to Plaintiff, and when Plaintiff knows that Janna's

version was already heard and found baseless by another Judge in State Court, is not only vexatious because has already adjudicated unfounded in another court, but is unduly burdensome in that Kathy and David will have to bring up private and painful information about their daughter whom they love and hope for a better life for, and relationship with, her in the future.

The document request, 41 different compound requests ask for documents which do not exist and never did, for private medical and educational records, husband wife communications, and irrelevant material, such as family photographs, without time limits.

## IV

## THE MOTION SHOULD NOT BE DEEMED UNTIMELY

The Parties efforts to meet and confer spanned several months as **Exhibit 5a-f** reveals. When Kathy and David declined to provide more dates for their depositions, on January 20, 2012, Plaintiff served the subject subpoenae, each with 40 compound document requests. **Battram Dec.: para. 2-3, attached.**

This motion has been worked on daily save three days in which Kathy and David considered attending the depositions. The undersigned counsel has Application for admission to the Southern District and for electronic filing was sent January 25 and realized she needed to Petition for admission to the Southern District, which was done so the Motion is being lodged as soon as practicable.

Furthermore, Movants were lulled into inaction by Plaintiff's counsel's call to the Southern District Court Magistrate to advise she was filing a Motion to Compel, instead, serving the subject subpoena on January 20, 2012, leaving Movants little time to inventory the documents sought by the 40 compound requests, to apply to the Southern District court, and file the motion. **Battram decl., Para. 2, attached.**

## V

## RELEVANCE/UNDUE BURDEN/VEXATIOUSNESS

A. <u>Motion to Quash</u>:

"FRCP45© states that "a party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject

to the subpoena," [**Federal Rule of Civil Procedure ("FRCP") 45© (1)**] and that the subpoena should be quashed when it ' subjects a person to an undue burden." **FRCP 45 (c)(3)(iv)**. The 1991 advisory committee notes make it clear that these provisions are meant to protect non-parties during their 'involuntary assistance to the court." **1991 Advisory Committee Notes regarding rule 45, subdivision ©**.

Although the rule's language is clear, at what point a burden becomes "undue" is the question for this honorable court, who may consider: (i) whether subpoena was issued primarily for purposes of harassment, (ii) whether there are other viable means to obtain same evidence, and (iii) extent to which information sought is relevant, nonprivileged, and crucial to moving party's case. [See *Bogosian v. Woloohojian Realty Corp.* 323 F.3d 55, 66-67 (1st Cir. 2003), See also *Pamida, Inc. V. E.S. Originals, Inc.*, 281., F. 3d 726, 729-30 (8th Cir.2002); *Gould, Inc. V. Mitsui Mining & Smelting Co., Ltd.*, 825 F.2d 676, 680 n. 2 (2d Cir.1987)]." [1]

The subject document requests ask for hypothetical documents, not knowing if some exist, such as photos, communications, pay outs, TROs, *etc.* **Exh.s 1 and 2.**

The document requests ask for documents Plaintiff and her counsel know do not exist, such as Restraining Orders in effect and that the boiling water issue has already been adjudicated in favor of Kathy. The documents request clearly seeks improper documents, such as school and therapy records for Janna, and medical information.

**B. Protective Order:**

Rule 26. General Provisions Governing Discovery; Duty of Disclosure, provides that:

"© Protective Orders. Upon motion by a party or by the person from whom discovery is sought, accompanied by a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action, and for good cause shown, the court in which the action is pending or alternatively, on matters relating to a deposition, the court in the district where the deposition is to be taken may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following:
 (1) that the disclosure or discovery not be had;

 (2) that the disclosure or discovery may be had only on specified terms and conditions, including a designation of the time or place;

 (3) that the discovery may be had only by a method of discovery other than that selected by the party seeking discovery;

 (4) that certain matters not be inquired into, or that the scope of the disclosure or discovery be limited to certain matters;..."

Movants precious supplied their declarations in an effort to provide Pamela with

---

[1] Quoted from Freshwater, et Al. V. Mount Vernon City S. Dist. Board of Ed. , et al. 2:09-cv-00464-GLF-NMK, by Judge Frost, 2010.

1 information which should inform her of the irrelevance of further exploration of the personal lives
2 of Movants and their daughter, have submitted some documents, have provided notification of
3 what documents do not exist.

4     Movants recognize their burden is to show good cause for the issuance of a protective
5 order, even though they are not parties to the case.

6     In **Glenmede Trust Co. v. Thompson,** 56 F.3d 476, 478 (1995) [3rd Cir.], the court
7 provides some guidance in determining good cause by enumerating a list of seven "good cause"
8 factors, the relevant ones set forth below:

9     1) whether disclosure will violate any privacy interests;
10     2) whether the information is sought for a legitimate purpose or for an improper purpose;
11     3) whether disclosure of the information will cause a party embarrassment;

12     The privacy interests in medical, financial, and private letters from Janna to her parents are
13 discussed in their declarations (**Exhibits 3 and 4**).  Creating an emotional distress case where one
14 does not exist is not a proper purpose.  Claiming a duty to investigate is breached because Kathy
15 and David come with baggage, when such "baggage" consists of common family disagreements
16 or differences of opinions, or especially when a mentally unbalanced daughter's fabricated stories
17 are used to create a breach of a duty, is improper at best.

18     Other methods of discovery such as looking at the public records which do exist, as in the
19 TRO case.  Pamela can and has testified as to her difference of opinion as how to raise her
20 children, who do not suffer from the medical and psychological conditions of Janna, she does not
21 need Kathy to disagree in a deposition.

22     Looking for theoretical dirt on a non-party witnesses simply should not be allowed for all
23 of the reasons stated herein.

24     Pamela's claim that she became severely emotionally distressed when she learned that
25 David was suggested, considered, (yet rejected) to serve as guardian *ad litem*, and Special
26 Administrator of the Estate of separate property of his brother Robert does not justify the vexatious
27 invasive, harassing, and burdensome discovery she has sought to base this claim, from Kathy, as
28

---

MEMORANDUM OF POINTS re: MOTION TO QUASH/PROTECTIVE ORDER
9
3:11-CV-00797

1 | well as David.

2 | First of all, she seeks information about, and further information, which she clearly did not
3 | know at the time her insurance company's attorneys suggested that David apply, nor at the time
4 | he was rejected, as special administrator.

5 | Plainly, she seeks "dirt" she can use to throw at her insurance company and shame them
6 | for even suggesting or nudging David to apply for these positions. David is not, nor has he ever
7 | been, a suspect or person of interest in the murder of Robert. Kathy was never suggested to nor
8 | did she apply as Guardian Ad Litem in this matter.

9 | Thus, what Pamela Stonebreaker learned or learns *after* David was suggested, did apply,
10 | and now, long since rejected, as special administrator and guardian ad litem, cannot be relevant
11 | to her emotional distress claim investigation.

## VI.

## CONCLUSION

Plaintiff's hesitation to file a Motion to Compel, re-serving the SUBPOENAE at the last possible moment with the burdensome compound requests speaks loudly that she knows she cannot sustain her burden of proof that the document request and depositions of movants are relevant, instead shifting the burden to the nonparty Movants.

Movants respectfully request that they be granted Leave to file this Motion as soon as the Petition for Admission and Electronic Passcode is issued to undersigned counsel;

Movants furthermore request that the subpoena of Kathy Stonebreaker be quashed.

Movants respectfully request that the subpoena of David Stonebreaker by quashed.

Alternatively, Movants respectfully request that a Protective Order issue, limiting the Document request to communications with counsel for Defendants, and written questions limited in number about these communications, or in some fashion in the Court's discretion.

DATED: January 27, 2011

LAW OFFICES OF LINDA M. BATTRAM

*/s/ Linda M. Battram*
Linda M. Battram, Esq.
Attorney for David and Kathy Stonebreaker

\* \* \* \* \* \* \* \* \*

### CERTIFICATION OF GOOD FAITH EFFORT TO MEET AND CONFER

I, Linda M. Battram, hereby certify that the Parties efforts to meet and confer spanned several months as **Exhibit 5** reveals, which are true and correct copies of correspondence between counsel. When Kathy and David declined to provide more dates for their depositions, on January 20, 2012, Plaintiff served the subject subpoenae, each with 40 compound document requests.

This motion has been worked on daily save three days in which Kathy and David considered attending the depositions. The undersigned counsel, who is a solo practitioner, had an application for electronic filing was which was sent a January 25 and realized she needed to Petition for admission to the Southern District, which was done via overnight mail, so the Motion is being lodged as soon as practicable.

Furthermore, Movants were lulled into inaction by Plaintiff's counsel's call to the Souther District Court Magistrate to advise she was filing a Motion to Compel, instead, serving the subject subpoena on January 20, 2012, leaving Movants little time to inventory the documents sought by the 40 compound requests, which is still being completed, and so Movants would not have been ready for the February 1 and 2 depositions, and were denied an extension of time when counsel could not assure Movants would appear on those dates.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Signed this 28th Day of January, at Claremont, California.

Linda M. Battram

---

MEMORANDUM OF POINTS re: MOTION TO QUASH/PROTECTIVE ORDER

11

3:11-CV-00797

## DECLARATION OF LINDA M. BATTRAM

I, LINDA M. BATTRAM, declare;

I am an attorney in good standing, duly licensed in the State of California, admitted in the Central District and United States Court of Appeals for the Ninth District, and have submitted a Petition, paying the fee, for admission to the Southern District Court. I am familiar with the following and could testify from first hand knowledge if called as witness thereto:

1.      Exhibit 5a-f, are true and correct copies of the correspondence between counsel for Plaintiff and for Movants David and Kathy Stonebreaker. Additionally, counsel engaged in two conversations regarding their respective positions.

2.      Sometime during the first week of January or so, Honorable Judge Gallo's clerk, Mark, called to advise the undersigned counsel that Plaintiff intended to file a Motion to Compel. Tod date, no such motion is forthcoming, and I was surprised by the January 20, 2012 subpoena, attached to the Exhibits as 1 and 2, which were served on my office, and apparently directly served on Kathy and David Stonebreaker at their home on January 27, 2012 with dates for February 1 and 2.

3.      I have diligently worked on this motion, and upon researching what documents exist and do not and could not file this any sooner. I am still awaiting the granting of my petition for admission to the Southern District in order to file this Motion formally.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Signed this 28th Day of January, at Claremont, California.

Linda M. Battram