1
2
3
4
5                    **UNITED STATES DISTRICT COURT**

6                    **SOUTHERN DISTRICT OF CALIFORNIA**

7

8    PAMELA STONEBREAKER,                          CASE NO. 11cv797 WQH (WVG)

9                              Plaintiff,          **ORDER**
           vs.
10   GUARDIAN LIFE INSURANCE
     COMPANY OF AMERICA, a
11   corporation; WESTERN RESERVE LIFE
     INSURANCE COMPANY OF OHIO, a
12   corporation; UNION SECURITY
     INSURANCE COMPANY, a corporation;
13   DOES 1-100, inclusive.

14                             Defendants.

15   WESTERN RESERVE LIFE
     INSURANCE COMPANY OF OHIO, a
16   corporation,

17                             Counterclaimant,
           vs.
18
     PAMELA STONEBREAKER,
19
                               Counterdefendant.
20
     WESTERN RESERVE LIFE
21   INSURANCE COMPANY OF OHIO, a
     corporation,
22
                               Third-party Plaintiff,
23
           vs.
24
     ROE ONE, as executor of the Estate of
25   Robert Stonebreaker; ROES 2-10,
     inclusive;
26
                               Third-party Defendants.
27

28

1

2

3   UNION SECURITY INSURANCE
    COMPANY, a corporation

4                           Counterclaimant,

5           vs.

6   PAMELA STONEBREAKER, an
    individual.

7                           Counterdefendant.

8   UNION SECURITY INSURANCE
    COMPANY, a corporation

9
                            Cross-Claimant,
10

11          vs.

12  KRISTIN STONEBREAKER, a minor;
    KELLI STONEBREAKER, a minor;

13                          Cross-Defendant.

14  GUARDIAN LIFE INSURANCE
    COMPANY OF AMERICA, a
15  corporation,

16                          Counterclaimant,

17          vs.

18  PAMELA STONEBREAKER,

19                          Counterdefendant.

20

21  GUARDIAN LIFE INSURANCE
    COMPANY OF AMERICA, a
22  corporation,

23                          Cross-Claimant,

24          vs.

25  KRISTIN STONEBREAKER, a minor;
    KELLI STONEBREAKER, a minor;
26  RYAN STONEBREAKER, a minor,

27                          Cross-Defendants.

28

HAYES, Judge:

The matters before the Court are the Motion for Summary Judgment (ECF No. 89) filed by Western Reserve Life Assurance Company of Ohio ("Western Reserve") and the Motion for Summary Judgment on Plaintiff's Complaint (ECF No. 140) filed by Defendant Union Security Insurance Company ("Union Security").

## I.   Background

On April 15, 2011, Defendants removed the Complaint filed by Pamela Stonebreaker in the Superior Court of California for the County of San Diego pursuant to 28 U.S.C. § 1332(a) diversity jurisdiction. Plaintiff alleged that she was married to Robert Stonebreaker who purchased the following life insurance policies: (1) three policies from Defendant Guardian Life Insurance Company ("Guardian") totaling $2,000,000; (2) one policy from Defendant Western Reserve in the amount of $250,000; (3) one policy from Defendant Union Security in the amount of $525,000. Plaintiff alleged that Robert Stonebreaker died on January 16, 2010, and that Defendants failed to pay the life insurance benefits to Plaintiff Stonebreaker, the primary beneficiary. Plaintiff asserts a claim for breach of contract and a claim for breach of the implied covenant of good faith and fair dealing against each Defendant.

On April 21, 2011, Western Reserve filed a Counterclaim in Interpleader against Plaintiff Stonebreaker and Third-party Complaint in Interpleader against the executor of the Estate of Robert Stonebreaker. Western Reserve alleged that Robert Stonebreaker's death was determined to be a homicide and Plaintiff, the beneficiary of the life insurance policy, was a suspect. Western Reserve alleged that Plaintiff would be prohibited from recovering the proceeds of the life insurance policy if she is found to have caused her husband's death and the policy proceeds would instead be distributed to the Estate of Robert Stonebreaker. Western Reserve alleged that payment of the proceeds may subject it to the risk of multiple claims although it admits the proceeds of the life insurance policy is due and owing to someone. Western Reserve deposited $251,576.62 with the Clerk of the Court as "the benefits payable under a life insurance policy issued by [Western Reserve] on the life of Robert Stonebreaker." (ECF No. 10 at 2)

On April 22, 2011, Union Security filed a Counterclaim in Interpleader against Plaintiff Stonebreaker and filed a Cross-claim in Interpleader against the guardian ad litem for Kristin Stonebreaker and Kelli Stonebreaker. Union Security alleged that Plaintiff is the primary beneficiary of the policies and two of the Stonebreaker's minor children are the secondary beneficiaries. Union Security alleged that it is willing and able to pay the proceeds of the life insurance policy, but it cannot determine the identity of the proper beneficiary. Union Security deposited $560,956.58 with the Clerk of the Court. *See* (ECF No. 49 at 2; 140 at 8).

On July 11, 2011, a guardian ad litem was appointed to represent Kristin, Kelli, and Ryan Stonebreaker, the minor children in this case.

On August 29, 2011, Western Reserve filed a Motion for Judgment in Interpleader (ECF No. 88) and a Motion for Summary Judgment (ECF No. 89).

On November 14, 2011, Union Security filed a Motion for Summary Judgment on Plaintiff's Complaint (ECF No. 140) and a Motion for Discharge and Dismissal of Disinterested Stakeholder (ECF No. 141).

This Court found that the Interpleaders are proper and has granted in part the Motion for Judgment in Interpleader (ECF No. 88) filed by Western Reserve and the Motion for Discharge and Dismissal of Disinterested Stakeholder (ECF No. 141) filed by Union Security. The Court concluded that Western Reserve and Union Security are fully discharged from liability regarding the interpleaded funds. The Court enjoined the parties from instituting or prosecuting any proceeding in any State or United States court against Western Reserve and Union Security with respect to the breach of contract claim regarding the interpleaded funds until further order of the Court. The Court held that the injunction does not apply to Plaintiff's claim for breach of the implied covenant of good faith and fair dealing against Western Reserve or Union Security.

## II.    Summary Judgment

Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. *See* Fed. R. Civ. P. 56(c). The moving party has the initial burden of demonstrating that summary judgment is proper. *See*

1   *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152 (1970).  The burden then shifts to the opposing

2   party to provide admissible evidence beyond the pleadings to show that summary judgment

3   is not appropriate.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 324 (1986).  "In

4   considering a motion for summary judgment, the court may not weigh the evidence or make

5   credibility determinations, and is required to draw all inferences in a light most favorable to

6   the non-moving party."  *Freeman v. Arpaio*, 125 F.3d 732, 735 (9th Cir. 1997); *see also*

7   *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).

8          To avoid summary judgment, the nonmovant must designate which specific facts show

9   that there is a genuine issue for trial.  *See Anderson*, 477 U.S. at 256; *Harper v. Wallingford*,

10   877 F.2d 728, 731 (9th Cir. 1989).   A "material" fact is one that is relevant to an element of

11   a claim or defense and whose existence might affect the outcome of the suit. *Matsushita Elec.*

12   *Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986).  The materiality of a fact is

13   determined by the substantive law governing the claim or defense.  *See Anderson*, 477 U.S.

14   at 252; *Celotex*, 477 U.S. at 322; *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).

15         **A.**    **Western Reserve**

16             **i.**    **Contentions of the Parties**

17         Western Reserve seeks summary judgment on Plaintiff's claim for breach of the implied

18   covenant of good faith and fair dealing "because [Western Reserve] did not breach either the

19   insurance contract or the implied covenant by depositing the Policy benefits with this Court."

20   (ECF No. 89-2 at 7).  Western Reserve contends that "Plaintiff cannot prove that [Western

21   Reserve] unfairly interfered with her right to receive the benefits of the insurance contract

22   [because] ...[Western Reserve] made certain that Plaintiff would have her fair opportunity to

23   receive the benefits of the insurance contract by depositing those benefits with the Court." *Id.*

24   at 13.  Western Reserve contends that the "interpleader does not constitute a breach of the

25   implied covenant of good faith and fair dealing ...." *Id*.

26         Plaintiff contends that Western Reserve breached the implied covenant of good faith

27   and fair dealing by delaying and mishandling Plaintiff's claim.  (ECF No. 165).  Plaintiff

28   contends that Western Reserve had "proof" that Robert Stonebreaker was dead by February

2010 and "could have either paid Mrs. Stonebreaker or interplead the funds" as of that date. *Id*. at 15.  Plaintiff contends that Western Reserve required Plaintiff to submit a death certificate although the terms of the policy did not require it and Western Reserve already knew Robert Stonebreaker was deceased.  *Id*. at 16.  Plaintiff contends that Western Reserve required Plaintiff to complete a "Claimant Statement" although the terms of the policy did not require it and Western Reserve already had access to all of the information contained in the "Claimant Statement."  *Id.* at 17.  Plaintiff contends that the fifteen month delay from the date that Plaintiff first contacted Western Reserve to the date that Western Reserve deposited the interpleader funds with the Clerk of the Court was unreasonable and constitutes bad faith. Plaintiff contends that Western Reserve failed to complete its own investigation into Plaintiff's claim and "improperly attempt[ed] to delegate that duty to law enforcement."  *Id*. at 22. Plaintiff contends that she has suffered emotional distress and financial hardship as a result of Defendant's refusal to pay the policy benefits.

### ii.   Undisputed Material Facts

On May 22, 1997, Western Reserve issued life insurance policy number 15B1001559 to Robert Stonebreaker.  (ECF No. 89-3 at 2; 89-6 at 4-37).  The policy provides for life insurance benefits in the amount of $250,000.  (ECF No. 89-6 at 22).  The policy provides: "If [Robert Stonebreaker dies] ... [Western Reserve] will pay the death benefit proceeds to the beneficiary upon receipt of due proof of [Robert Stonebreaker's] death."  *Id*. at 4.  The primary beneficiary to the policy is Plaintiff Pamela Stonebreaker and there are no contingent beneficiaries.  *Id*. at 34.  The life insurance policy provides that: "The Beneficiary ... will receive the benefits payable at your death.  If the Beneficiary dies before you, the Contingent Beneficiary, if named, becomes the Beneficiary.  If no Beneficiary survives you, the benefits payable at your death will be paid to the Owner or the Owner's estate."  *Id*. at 10.

On January 17, 2010, Robert Stonebreaker's body was discovered in the driveway of a home in Rancho Santa Fe, California.  (ECF No. 165-1 at 2).  On January 19, 2010, a representative for Pamela Stonebreaker called Western Reserve to report the death.  (ECF No. 89-3 at 2).  A letter dated January 20, 2010 from Western Reserve to Pamela Stonebreaker

1   stated: "Enclosed are the claim forms as requested.  The requirements to process claims are:
2   Fully completed claimant statement ... [and] one original Certified Death Certificate with cause
3   and manner of death...."  (ECF No. 89-6 at 42).

4       On February 12, 2010, Detective Scott Enyeart of the San Diego County Sheriff's
5   Department sent a "Law Enforcement Inquiry" to Western Reserve which stated: "Detective
6   Enyeart is investigating the death of [Robert Stonebreaker].  He is requesting [that Western
7   Reserve] search [its] records to determine if the individual has a policy with [Western
8   Reserve]...."  (ECF No. 89-6 at 63).

9       On May 4, 2010,  Amy DeLong, Western Reserve special investigative unit, contacted
10  Detective Enyeart who told DeLong that Pamela Stonebreaker was a suspect in Robert
11  Stonebreaker's death.[1]  (ECF No. 89-4 at 2).

12      On August 25, 2010, Western Reserve received the completed claimant statement from
13  Pamela Stonebreaker in which she elected to receive a complete distribution of the policy
14  benefits.  (ECF No. 89-6 at 41).  Western Reserve also received a death certificate dated
15  January 20, 2010 for Robert Stonebreaker which listed the cause of death as "pending."  (ECF
16  No. 89-6 at 48).  A letter dated August 25, 2010 from Western Reserve to Pamela Stonebreaker
17  states: "[Western Reserve] has received the following: Pending Death Certificate [and] Claim
18  Form .... Before proceeding in the settlement of the claim we will require the death certificate
19  showing both cause and manner of the decedent's death."  (ECF No. 89-6 at 46).

20      An email dated October 14, 2010 from Amy DeLong to Rowena Chillura, Western
21  Reserve claims department, states: "I left a voicemail for Detective Enyeart and in turn, he left
22  one for me.... The detective stated that [Pamela Stonebreaker] is a 'suspect' and that Robert
23  Stonebreaker's death is a 'murder.' He anticipates Mrs. Stonebreaker to be a suspect for 'an
24  extended period of time' .... I am adding the case to our BWise risk management (ORM)
25  system."  (ECF No. 89-6 at 65).

26      On December 20, 2010, Western Reserve received a certified copy of Robert

27  _____

28      [1]  Plaintiff objects to this evidence as inadmissible hearsay; however, the statement is admissible to show the declarant's then-existing state of mind pursuant to Fed. R. Evid. 803(3).

Stonebreaker's amended death certificate which lists the manner of death as "homicide" and cause of death as "homicidal violence."  (ECF Nos. 89-6 at 52; 165-1 at 4).

On January 11, 2011, Versia Larry, Western Reserve senior claims examiner, sent an email to Amy DeLong, special investigation unit, which stated: "If the investigator does not call us, what is our next line of action?  Will we forward the case to Legal for review, please advise."  (ECF No. 165-12 at 2).   An email response from Amy DeLong to Versia Larry stated: "No response yet from my most recent call to the detective.  We have no tangible conclusions from law enforcement and a claimant/suspect who is wondering where the claim money is.  I would recommend contact with Legal if you're concerned about bad faith."  (ECF No. 165-12 at 2).

Western Reserve retained Al Broyles, Claim Decision Support.  Broyles submitted an investigative report to Western Reserve on January 12, 2011 stating:

> Source [Detective Enyeart] states Pam Stonebreaker has not been ruled out as a suspect in the death of her husband Robert Stonebreaker. This case is still open and no arrests have been made. He will not tell us why she is not ruled out but confirms she is not ruled out.... Enyeart does not know how much longer it will take to rule her in or out as a suspect.... Enyeart tells us Pam Stonebreaker initially spoke to them and did not give them the entire story and that she has some explaining to do.
>
> We asked this source if they have any other suspects at this time and the [source] stated 'the only people who are not suspects are you and me.'

(ECF Nos. 89-3 at 3; 89-6 at 55-56).

An email dated January 12, 2011, from Detective Enyeart to Broyles stated: "This is to confirm, Pam Stonebreaker, has not been ruled out as a suspect in the death of her husband, Robert Stonebreaker.  I have no time line as to when she will or can be ruled out."  (ECF No. 89-6 at 57).

On March 16, 2011, Plaintiff sued Western Reserve for breach of contract and breach of the implied covenant of good faith and fair dealing.  (ECF No. 1-1).

On April 15, 2011, Western Reserve joined in the removal of the matter to this Court. (ECF No. 3).

On April 21, 2011, Western Reserve filed an Answer to the Complaint, a Counterclaim

1   in Interpleader against Pamela Stonebreaker, and a Third-party Complaint in Interpleader

2   against the executor of Robert Stonebreaker's estate as its initial responsive pleading.  (ECF

3   No. 9).  On April 21, 2011, Western Reserve deposited the interpleader funds with the Clerk

4   of the Court.  (ECF No. 10).

5       On April 25, 2011, Plaintiff's counsel sent Western Reserve a letter containing a

6   timeline of Pamela Stonebreaker's whereabouts on January 16 and 17, 2010 along with copies

7   of the alarm reports for the animal hospital where Pamela and Robert Stonebreaker worked,

8   phone records, and photographs of the car that Robert Stonebreaker had been driving shortly

9   before his death.  (ECF No. 165-6 at 3-9).

10      On July 6, 2011, the San Diego County Sheriff's Department sent a letter to Plaintiff's

11  counsel stating: "Please be advised that the Sheriff's investigation is ongoing, and at this time,

12  not completed.   Accordingly, the Sheriff's Department asserts the Official Information

13  Privilege ... over any and all information and documents pertaining to the investigation."  (ECF

14  No. 89-6 at 72).

15      To date, the state probate court has not appointed an executor of the Estate of Robert

16  Stonebreaker.  (ECF No. 165-1at 4).

17              **iii.    Discussion**

18      Every contract imposes an implied duty of good faith and fair dealing.  *See Egan v.*

19  *Mutual of Omaha Ins. Co.,* 24 Cal.3d 809, 818 (1979).  The implied covenant of good faith and

20  fair dealing holds that "neither party will do anything which injures the right of the other to

21  receive the benefits of the agreement."  *Schoolcraft v. Ross,* 81 Cal. App. 3d 75, 80 (1978)

22  (quotation omitted).  In the insurance context, an insurer has the "responsibility to act fairly

23  and in good faith with respect to the handling of the insured's claim ...."  *Chateau Chamberay*

24  *Homeowners Ass'n v. Associated Int'l Ins. Co.*, 90 Cal. App. 4th 335, 340 (2001) (quotations

25  and citations omitted).   "A breach of the implied covenant of good faith and fair dealing

26  involves something beyond breach of the contractual duty itself, ... [b]ad faith implies unfair

27  dealing rather than mistaken judgment...."  *Chateau*, 90 Cal. App. 4th at 345 (quotations and

28  citations omitted).  "[B]efore an insurer can be found to have acted tortiously (i.e., in bad

1   faith), for its delay or denial in the payment of policy benefits, it must be shown that the insurer
2   acted unreasonably or without proper cause." *Id*. at 346 (citing *Dalrymple v. United Services*
3   *Auto. Assn.,* 40 Cal. App. 4th 497, 520 (1995)).

4       "The reasonableness of an insurer's claims-handling conduct is ordinarily a question
5   of fact." *Chateau*, 90 Cal. App. 4th at 346.  The reasonableness of an insurer's
6   claims-handling conduct "becomes a question of law where the evidence is undisputed and
7   only one reasonable inference can be drawn from the evidence." *Id*.  "[W]hether an insurer
8   breached its duty to investigate ... [is] a question of fact to be determined by the particular
9   circumstances of each case." *Paulfrey v. Blue Chip Stamps,* 150 Cal. App. 3d 187, 196 (1983).
10   Whether an insurer breached its duty to investigate becomes is a question of law "where but
11   one inference can be drawn from the evidence."  *Id*.; *see also United Investors Life Ins. Co.*
12   *v. Grant,* 387 Fed. App'x 683, 688 (9th Cir. 2010). ("[A] court may find a limited investigation
13   or payment below the amount due reasonable as a matter of law. However, the reasonableness
14   of an insurer's claims-handling conduct is ordinarily a question of fact.") (quotations and
15   citation omitted).

16       In *United Investors Life Ins. Co. v. Grant,* the district court denied summary judgment
17   stating: "[I]t is ... undisputed that [the insurer] did no investigation of their own to help
18   determine [the beneficiary's] involvement, if any, in [the insured's] death prior to interpleading
19   the policy proceeds some fourteen months after the claim was initially submitted." *United*
20   *Investors Life Ins. Co. v. Grant,* Case No. 2:05-cv-1716-MCE-DAD,  2007 WL 521804 at *
21   2 (E.D. Cal. Feb. 15, 2007).  The district court held: "These circumstances ... present triable
22   issues of fact with respect to the reasonableness of United Investors' claims handling that make
23   this case not amenable to disposition on summary judgment." *Id.*  The case went to trial and
24   a verdict was rendered in favor of the beneficiary on the claim of breach of the duty of good
25   faith and fair dealing.  The insurer appealed to the Court of Appeals for the Ninth Circuit
26   which stated that "[t]he question of liability was properly presented to the jury." *United*
27   *Investors Life Ins. Co.,* 387 Fed. App'x at 687.  The Court of Appeals stated:

28           [The insurer] did not dispute coverage, it just worried about double
            liability. [The beneficiary] proffered evidence that [the insurer] could

1    have dealt with that concern much more quickly, either through
2    investigation or by filing an action in interpleader earlier. She proffered
     evidence that [the insurer] violated both its own unwritten policies and
3    California law, making its conduct unreasonable. Contrary to [the
     insurer's] assertions, filing an interpleader action fifteen months after
4    receiving a claim and after minimal, pro forma investigation, where the
     beneficiary was never arrested, was not reasonable as a matter of law.

5    *Id*. at 688.

6         In this case, the evidence shows that there was a delay of approximately fifteen months

7    from Plaintiff's initial claim to the policy benefits to Western Reserve's filing of an

8    Interpleader regarding the policy benefits.  The evidence shows that shortly after Plaintiff made

9    her claim to the life insurance benefits, Western Reserve was informed that the Sheriff's

10   Department was investigating the insured's death and that Pamela Stonebreaker had not been

11   ruled out as a suspect.  Western Reserve attempted to obtain a death certificate which stated

12   the cause and manner of death and contacted the Sheriff's Department on a number of

13   occasions to determine whether Pamela Stonebreaker had been ruled out as a suspect.  On May

14   4, 2010, Detective Enyeart told Western Reserve that Pamela Stonebreaker was a suspect in

15   Robert Stonebreaker's death.  On October 14, 2010, email correspondence between Western

16   Reserve employees indicates that Detective Enyeart told Western Reserve "that [Pamela

17   Stonebreaker] is a 'suspect' and that Robert Stonebreaker's death is a 'murder.' He anticipates

18   Mrs. Stonebreaker to be a suspect for 'an extended period of time'" (ECF No. 89-6 at 65).  On

19   January 12, 2011, Western Reserve obtained an investigative report which stated that Detective

20   Enyeart was asked " if they have any other suspects at this time and the [source] stated 'the

21   only people who are not suspects are you and me.'"  (ECF Nos. 89-3 at 3; 89-6 at 55-56).  On

22   that same day, Detective Enyeart stated in an email: "This is to confirm, Pam Stonebreaker,

23   has not been ruled out as a suspect in the death of her husband, Robert Stonebreaker.  I have

24   no time line as to when she will or can be ruled out."  (ECF No. 89-6 at 57).  Pamela

25   Stonebreaker has not been arrested or charged with the murder of Robert Stonebreaker.

26        Viewing the facts in the light most favorable to Plaintiff, the Court concludes that there

27   is more than one reasonable inference that can be drawn from the facts of this case.  A trier of

28   fact could conclude that Western Reserve unreasonably delayed in filing the Interpleader.  *See*

*Chateau*, 90 Cal. App. 4th at 346.  Defendant Western Reserve is not entitled to summary judgment on Plaintiff's claim for breach of the implied covenant of good faith and fair dealing.

### B.    Union Security

#### i.    Contentions of the Parties

Union Security seeks summary judgment on Plaintiff's claim for breach of the implied covenant of good faith and fair dealing. (ECF No. 140).  Union Security contends that it could not make a final determination regarding payment of benefits until the final death certificate was received on December 20, 2010.  Union Security contends that it had the right to interplead the insurance benefits because it was faced with multiple liability.  Union Security contends that it did not deviate from its policy or California law by interpleading the funds.  Union Security contends that it "received a completed claims application in August 2010 and a final death certificate in December 2010, and then filed the interpleader action a mere four months later." *Id.* at 29.  Union Security contends that Plaintiff has not been damaged by any delay.

Plaintiff contends that Union Security breached the implied covenant of good faith and fair dealing by delaying and mishandling Plaintiff's claim. (ECF No. 184).  Plaintiff contends that Union Security had "proof" that Robert Stonebreaker was dead by January 2010, and Union Security "could have either paid Mrs. Stonebreaker or interplead the funds" as of that date.  *Id.* at 12.  Plaintiff contends that Union Security required Plaintiff to submit a death certificate although the policy did not require it.  *Id.* at 13.  Plaintiff contends that Union Security also required Plaintiff to complete a "Claim Form" although the policy did not require it and although Union Security already had access to all of the information contained in the "Claim Form."  *Id.* at 14.  Plaintiff contends that Union Security also required Plaintiff to submit a final death certificate.  Plaintiff contends that Union Security received the final death certificate in December 2010 but waited several months to interplead the funds.  Plaintiff contends that the delay in filing an interpleader action was unreasonable and constitutes bad faith. Plaintiff contends that Union Security failed to complete its own investigation into Stonebreaker's claim and "improperly attempt[ed] to delegate that duty to law enforcement."

1    *Id*. at 19.  Plaintiff contends that she has suffered "severe emotional distress and financial

2    devastation" as a result of Defendant's refusal to pay the policy benefits.

3                              **ii.      Undisputed Material Facts**

4          On September 18, 2000, Union Security issued life insurance policy number

5    1231292170 to Robert Stonebreaker.  (ECF No. 140-15 at 7).  The policy provides for life

6    insurance benefits in the amount of $500,000.  *Id*.  The policy provided:  "[Union Security]

7    will pay the death benefit proceeds upon due proof satisfactory to us that the insured died while

8    insured under this policy."  (ECF No. 140-15 at 17).  The policy named Pamela Stonebreaker

9    as the primary beneficiary and Kristin Stonebreaker and Kelli Stonebreaker as the contingent

10   beneficiaries.  (ECF No. 140-15 at 33).

11         An entry in Union Security's claim history report by Marilyn Meister on January 22,

12   2010, states: "Call with Det. Scott Enyeart .... He stated they are 99% sure it is a homicide....

13   They do not have any suspects and the wife has not been ruled in or out at this time. ... The

14   autopsy is sealed. The death cert is ready, but it is a 'pending' cause of death. I advised him

15   we do not pay claims until there is a final cause of death on the death cert. He said we won't

16   be paying this for a while then."  (ECF No. 140-14 at 32).

17         On January 22, 2010, Union Security sent a letter to Pamela Stonebreaker's

18   representative which states: "To begin processing the claim ... we need the following: certified

19   death certificate, stating final cause of death [and a]... completed claim form with original

20   signature.  We understand that this may be a homicide and that an investigation is being

21   conducted.  No settlement will be made until that is completed and the final death certificate

22   is issued."  (ECF No. 140-16 at 2).

23         An entry in Union Security's claim history report by Marilyn Meister on March 18,

24   2010, states: "Call from Det Scott Enyeart. The case has been ruled a homicide now. They can

25   not release the manner of his death as that [information] is sealed for now. No arrests have

26   been made and the wife has not been ruled out as a suspect..... Advised him I will need to

27   discuss situation with my [manager] and our Legal Team to see how they want to handle this."

28   (ECF No. 140-14 at 28).

An entry in Union Security's claim history report by Marilyn Meister on May 6, 2010, states: "Call from Aaron Wiegman, financial planner of wife. ... Told him we have spoken to the police about this and have been advised it was ruled a homicide, so until [the police] complete their investigation, we will not be making settlement. Wanted to know if a final [death certificate] is issued would we then make settlement.... If it still can not be determined, we sometimes pay the benefit to the Court and the Court decides." (ECF No. 140-14 at 26).

An entry in Union Security's claim history report by Marilyn Meister on May 14, 2010, states: "Call from Det Scott Enyeart. He stated nothing further has developed in this case. Stated Pamela Stonebreaker is not out from suspicion either." (ECF No. 140-14 at 23).

An entry in Union Security's claim history report by Marilyn Meister on August 26, 2010, states: "Pending death [certificate] without a manner of death received ... with our completed claim form. ... We need to contact the [medical examiner's] office and see if the final [death certificate is available] and ask them if it states homicide." (ECF No. 140-14 at 17).

On August 27, 2010, Union Security sent a letter to the County of San Diego Office of Vital Records which states; "Please provide us with an informational copy of the final death record for Robert Stonebreaker." (ECF No. 140-24 at 2).

An entry in Union Security's claim history report by Marilyn Meister on August 30, 2010, states: "Claim is not in good order. Final death certificate has not been received and the [beneficary] is currently a suspect.... We are attempting to get a copy of the final death [certificate]. A requisition is on the way to Simsbury for a check to be cut for the charge. Letter is with it for them to send with the check." (ECF No. 140-14 at 16).

On August 30, 2010, Union Security sent a letter to Pamela Stonebreaker stating: "We have received the claim form and death certificate that you recently submitted. Unfortunately, we will need a death certificate with the final cause of death on it." (ECF No. 140-25 at 2).

An entry in Union Security's claim history report by Marilyn Meister on September 7, 2010, states: "I am out of the office for business and can not continue with interpleader until later this week. Will meet with [manager] then." (ECF No. 140-14 at 15).

An entry in Union Security's claim history report by Marilyn Meister on September 29, 2010, states: "[W]e are currently waiting for the 'informational' copy of the death [certificate] I was assured by a representative of the [County] of San Diego that it will contain the final cause of death."  (ECF No. 140-14 at 12).

An entry in Union Security's claim history report by Marilyn Meister on November 23, 2010, states: "Information Death Certificate received. It states the cause of death was Homicidal Violence[.]  Claim is again up for follow up. I will call the detective first for an update from him."  (ECF No. 140-14 at 10).

An entry in Union Security's claim history report on November 23, 2010, notes that Marilyn Meister contacted Detective Enyeart and states:

> Pamela Stonebreaker is still their #1 suspect. In fact, she is the only suspect. They have nothing on no body else. Pamela will not talk to them. He said they went into the house and the computers and found some things and that is currently what he wants to find out about. He knows her [attorney] and he keeps telling him to have her talk to them. [Attorney] says she will. But, she still refuses. Pamela is a "very strong suspect." Says this could go on for years. He feels we could interplead because it was a homicide and the [beneficiary] is currently the main suspect.

(ECF No. 140-14 at 9).

On December 20, 2010, Union Security received the final death certificate which states that the cause of death was "homicidal violence." (ECF Nos. 140-30 at 5; 184-1 at 12).

On December 22, 2010, Union Security sent a letter to Pamela Stonebreaker which states: "This claim has been referred to our Legal Department for review as the San Diego Sheriff's Department has informed us you have not been released as a suspect in this homicide. Until you are released as a suspect, we are unable to make a settlement of this claim to you." (ECF No. 140-32 at 2).

On March 16, 2011, Plaintiff sued Union Security for breach of contract and breach of the implied covenant of good faith and fair dealing.  (ECF No. 1-1).

On April 15, 2011, Union Security removed the matter to this court.  (ECF No. 1).

On April 22, 2011, Union Security filed an Answer to the Complaint, a Counterclaim in Interpleader against Pamela Stonebreaker, and a Cross-claim against Kelly and Kristin

1   Stonebreaker as its initial responsive pleading. (ECF Nos. 12-14, 118). On June 23, 2011,

2   Union Security deposited the interpleader funds with the Clerk of the Court. (ECF No. 49).

3        On April 25, 2011, Plaintiff's counsel sent Union Security a letter containing a timeline

4   of Pamela Stonebreaker's whereabouts on January 16 and 17, 2010, along with copies of the

5   alarm reports for the animal hospital where Pamela and Robert Stonebreaker worked, phone

6   records, and photographs of the car that Robert Stonebreaker had been driving shortly before

7   his death. (ECF No. 185-5 at 3-9).

8                    **iii.    Discussion**

9        In this case, the evidence shows that there was a delay of approximately fifteen months

10  from Plaintiff's initial claim to the policy benefits to Union Security's filing of an Interpleader

11  regarding the policy benefits. The evidence shows that shortly after Plaintiff made her claim

12  to the life insurance benefits, Union Security was informed that the Sheriff's Department was

13  investigating the insured's death and that Pamela Stonebreaker had not been ruled out as a

14  suspect. Union Security attempted to obtain a death certificate which stated the cause of death

15  and contacted the Sheriff's Department on a number of occasions to determine whether Pamela

16  Stonebreaker had been ruled out as a suspect. As early as January 22, 2010, a Union Security

17  employee noted: "Call with Det. Scott Enyeart ....They do not have any suspects and the wife

18  has not been ruled in or out at this time. ... I advised him we do not pay claims until there is a

19  final cause of death on the death cert. He said we won't be paying this for a while then." (ECF

20  No. 140-14 at 32). On March 18, 2010, a Union Security employee noted: "Call from Det

21  Scott Enyeart. The case has been ruled a homicide now. They can not release the manner of

22  his death as that [information] is sealed for now. No arrests have been made and the wife has

23  not been ruled out as a suspect....." (ECF No. 140-14 at 28). On May 14, 2010, a Union

24  Security employee noted: "Call from Det Scott Enyeart. He stated nothing further has

25  developed in this case. Stated Pamela Stonebreaker is not out from suspicion either." (ECF

26  No. 140-14 at 23). On November 23, 2010, a Union Security employee noted that she

27  contacted Detective Enyeart who stated that "Pamela Stonebreaker is still their #1 suspect. In

28  fact, she is the only suspect. They have nothing on no body else.... Says this could go on for

1    years." (ECF No. 140-14 at 9).  Pamela Stonebreaker has not been arrested or charged with

2    the murder of Robert Stonebreaker.

3            Viewing the facts in the light most favorable to Plaintiff, the Court concludes that there

4    is more than one reasonable inference that can be drawn from the facts of this case.  A trier of

5    fact could conclude that Union Security unreasonably delayed in filing the Interpleader.  *See*

6    *Chateau*, 90 Cal. App. 4th at 346.  Defendant Union Security is not entitled to summary

7    judgment on Plaintiff's claim for breach of the implied covenant of good faith and fair dealing.

8            In addition, Western Reserve and Union Security contend that there is a genuine dispute

9    regarding Plaintiff's entitlement to the insurance benefits which bars her claim for breach of

10   the implied covenant of good faith and fair dealing.  "[A]n insurer denying or delaying the

11   payment of policy benefits due to the existence of a genuine dispute with its insured as to the

12   existence of coverage liability or the amount of the insured's coverage claim is not liable in

13   bad faith even though it might be liable for breach of contract."  *Chateau*, 90 Cal. App. 4th at

14   346 (citing *Fraley v. Allstate Ins. Co.,* 81 Cal. App. 4th 1282, 1292 (2000)).  However, when

15   it is undisputed that the insurer is obligated to pay the claim and "the only question [is] as to

16   whom[,] the [insurer] cannot rely upon [a genuine dispute] to avoid the general proposition that

17   delay in paying an admittedly payable claim may be actionable."  *United Investors Life Ins.*

18   *Co. v. Grant*, Case No. 2:05-cv-1716-MCE-DAD, 2007 WL 521804 at *2 n.7 (E.D. Cal. Feb.

19   15, 2007).  In this case, Western Reserve and Union Security do not dispute the existence or

20   amount of coverage.  Accordingly, Defendants Western Reserve and Union Security are not

21   entitled to summary judgment on Plaintiff's claim for breach of the implied covenant of good

22   faith and fair dealing due a genuine dispute as to the existence or amount of coverage.

23   ///

24   ///

25   ///

26   ///

27   ///

28   ///

1

**III.     Conclusion**

2          IT IS HEREBY ORDERED that the Motion for Summary Judgment (ECF No. 89) filed

3  by Western Reserve and the Motion for Summary Judgment on Plaintiff's Complaint (ECF No.

4  140) filed by Union Security are DENIED.

5  DATED:  February 23, 2012

6

                                  **WILLIAM Q. HAYES**
7                                  United States District Judge

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28