**FILED**

SEP 2 5 2012

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PAMELA STONEBREAKER, | CASE NO. 11cv797 WQH (WVG) |
| Plaintiff, | **ORDER** |
| vs. | |
| GUARDIAN LIFE INSURANCE COMPANY OF AMERICA, a corporation; WESTERN RESERVE LIFE INSURANCE COMPANY OF OHIO, a corporation; UNION SECURITY INSURANCE COMPANY, a corporation; DOES 1-100, inclusive. | |
| Defendants. | |
| WESTERN RESERVE LIFE INSURANCE COMPANY OF OHIO, a corporation, | |
| Counterclaimant, | |
| vs. | |
| PAMELA STONEBREAKER, | |
| Counterdefendant. | |
| WESTERN RESERVE LIFE INSURANCE COMPANY OF OHIO, a corporation, | |
| Third-party Plaintiff, | |
| vs. | |
| ROE ONE, as executor of the Estate of Robert Stonebreaker; ROES 2-10, inclusive; | |
| Third-party Defendants. | |

1

2

3  UNION SECURITY INSURANCE
   COMPANY, a corporation

4                               Counterclaimant,

5        vs.

6  PAMELA STONEBREAKER, an
   individual.

7                               Counterdefendant.

8  UNION SECURITY INSURANCE
   COMPANY, a corporation

9

10                              Cross-Claimant,

11       vs.

12 KRISTIN STONEBREAKER, a minor;
   KELLI STONEBREAKER, a minor;

13                              Cross-Defendant.

14 GUARDIAN LIFE INSURANCE
   COMPANY OF AMERICA, a
15 corporation,

16                              Counterclaimant,

17       vs.

18 PAMELA STONEBREAKER,

19                              Counterdefendant.

20

21 GUARDIAN LIFE INSURANCE
   COMPANY OF AMERICA, a
   corporation,
22

23                              Cross-Claimant,

24       vs.

25 KRISTIN STONEBREAKER, a minor;
   KELLI STONEBREAKER, a minor;
   RYAN STONEBREAKER, a minor,
26

27                              Cross-Defendants.

28

1   HAYES, Judge:

2        The matters before the Court are the Motion for Summary Judgment (ECF No. 256)

3   filed by Guardian Life Insurance Company of America ("Guardian") and the Motion for Partial

4   Summary Judgment on Guardian's Lapse Defense (ECF No. 267) filed by Pamela

5   Stonebreaker ("Plaintiff").

6                          **PROCEDURAL HISTORY**

7        On April 15, 2011, Guardian removed the Complaint filed in the Superior Court of

8   California, County of San Diego against Defendant Guardian and two other insurance

9   companies, Union Security Insurance Company and Western Reserve Life Assurance

10   Company of Ohio. (ECF No. 1). Plaintiff alleged in the Complaint that she was married to

11   Robert Stonebreaker who had purchased three life insurance policies from Guardian, with a

12   total of $2,000,000 in coverage. *Id.* at 7-10. Plaintiff alleged that Robert Stonebreaker died

13   on January 16, 2010, and that Guardian failed to pay the life insurance benefits to Plaintiff, the

14   primary beneficiary. *Id.* Plaintiff asserts claims for breach of contract and breach of the

15   implied covenant of good faith and fair dealing against Guardian. *Id.* at 10-14. On April 22,

16   2011, Guardian filed an answer. (ECF No. 16).

17        On April 22, 2011, Guardian filed a Counterclaim for Interpleader against Plaintiff and

18   filed a Cross-claim in Interpleader against Kristin Stonebreaker, Kelli Stonebreaker, and Ryan

19   Stonebreaker, minor children. (ECF Nos. 17, 18). Guardian alleged that Plaintiff is the

20   primary beneficiary to a life insurance policy owned by Robert Stonebreaker and that Kristin

21   Stonebreaker, Kelli Stonebreaker, and Ryan Stonebreaker are the secondary beneficiaries. *Id.*

22   Guardian alleged that it is willing and able to pay the proceeds of the life insurance policy, but

23   it cannot determine the identity of the proper beneficiary. *Id.* On October 5, 2011, Guardian

24   deposited $1,998,397.41 with the Clerk of the Court as "the benefits payable under a life

25   insurance policies issued by [Guardian] on the life of Robert Stonebreaker." (ECF No. 121

26   at 2).

27        On July 11, 2011, a guardian ad litem was appointed to represent Kristin Stonebreaker,

28   Kelli Stonebreaker, and Ryan Stonebreaker, the minor children in this case. On November 23,

11cv797 WQH (WVG)

1    2011, the guardian ad litem filed a "Notice of No Competing Claim and Non-opposition to the
2    Motion for Disbursement of Funds to Plaintiff Stonebreaker." (ECF No. 151). The guardian
3    ad litem states "that she has not and is not making competing claims to the funds that
4    [Guardian], [Union Security], and [Western Reserve] have deposited with the Court.... [The
5    guardian ad litem] is unaware of evidence sufficient to justify making a competing claim and
6    ... believes that the Stonebreaker children have no right to claim the policy proceeds." *Id.* at
7    2.

8          On November 23, 2011, Plaintiff filed a Motion for Release of Funds that Guardian
9    Deposited with the Court. (ECF No. 152). On December 14, 2011, Guardian filed a "Limited
10   Opposition" stating that Guardian opposed distribution of the funds "to the extent the motion
11   seeks an order releasing funds without setting aside a portion of the interpleaded funds for
12   reimbursement of the Guardian's attorney's fees and expenses in this matter." (ECF No. 187
13   at 4).

14         On February 23, 2012, the Court found that Guardian filed an appropriate interpleader
15   "on the grounds that: (1) Guardian filed a counterclaim in interpleader pursuant to Rule 22; (2)
16   Guardian has demonstrated that it claims no interest in the funds; and (3) there are multiple
17   possible claimants to the insurance benefits." (ECF No. 212 at 15).  With regard to the
18   distribution of the interpleaded funds, the Court stated: "All potential claimants are entitled to
19   have an opportunity to make a claim to the interpleaded funds. In this case, the Estate of
20   Robert Stonebreaker has not appeared. ... The Motion[] for Release of Funds (ECF [No. 152])
21   filed by Plaintiff Stonebreaker remain[s] pending." *Id.* at 15.

22         On April 10, 2012, Elizabeth S. del Pozo, Special Administrator of the Estate of Robert
23   Stonebreaker, responded to the Motion for Release of Funds Deposited by Guardian, taking
24   no position on the matter.  (ECF No. 237).  On April 30, 2012, the Guardian Ad Litem for
25   Kristin Stonebreaker, Kelli Stonebreaker, and Ryan Stonebreaker filed a response to the
26   Motion for Release of Funds Deposited by Guardian which states that she "continues to be
27   unaware of evidence sufficient to justify making a competing claim to the insurance policy
28   proceeds.... Accordingly, Cowett, as Guardian Ad Litem for the Stonebreaker Children, does

1  not oppose Pamela Stonebreaker's Motion for Release of Funds, and is willing to accept

2  whatever decision is made by the Court on this motion." (ECF No. 246 at 2).

3         On May 7, 2012, Plaintiff filed a Reply contending that the funds should be

4  "immediately released" to Plaintiff. (ECF No. 251 at 3).

5         On May 11, 2012, Guardian filed a Motion for Summary Judgment on Plaintiff's breach

6  of contract claim and breach of the implied covenant of good faith and fair dealing claim.

7  (ECF No. 256).  On July 9, 2012, Plaintiff filed an Opposition. (ECF No. 263).  On July 16,

8  2012, Guardian filed a Reply. (ECF No. 264).

9         On July 20, 2012, Plaintiff filed a Motion for Partial Summary Judgment on Defendant

10  Guardian's Lapse Defense. (ECF No. 267).  On August 6, 2012, Guardian filed an Opposition.

11  (ECF No. 279).  On August 24, 2012, Plaintiff filed a Reply. (ECF No. 292).

12         On August 2, 2012, the Court granted the Motion for Release of Funds that Guardian

13  Deposited with the Court, finding that "Plaintiff is entitled to distribution of the funds

14  interpleaded by Guardian." (ECF No. 275 at 6).  The Court stated: "Guardian may file a

15  motion for attorneys' fees incurred in interpleading the funds no later than 10 days from the

16  date of this Order." *Id.*

17         On August 13, 2012, Guardian filed a Motion for Attorneys' Fees, requesting that the

18  Court award Guardian $464,994.00 in fees and $128,784.97 in costs. (ECF No. 288).  On

19  August 31, 2012, Plaintiff filed an Opposition. (ECF No. 302).  On September 10, 2012,

20  Guardian filed a Reply. (ECF No. 308).

21  **FACTS**

22         On July 1, 2007, Robert Stonebreaker purchased three life insurance policies from

23  Guardian: a whole life policy (No. 5393228) which provided a death benefit of $250,000; a

24  term policy (No. 5405892) which provided a death benefit of $1,000,000; and a term policy

25  (No. 5405896) which provided a death benefit of $750,000. (ECF No. 292-1 at 2).  Plaintiff

26  was the primary beneficiary and Kristin Stonebreaker, Kelli Stonebreaker and Ryan

27  Stonebreaker were the secondary beneficiaries.

28         In late 2009, Rod Crews ("Crews"), a financial representative of Guardian, called the

1  Stonebreakers' financial advisor, Aaron Wiegman ("Wiegman"), and informed him that the

2  Stonebreakers were behind on their premium payments and needed to make a payment to keep

3  the term policies in force. (ECF No. 279-1 at 11; ECF No. 263-5 at 21-22).  On December 29,

4  2009, the Stonebreakers sent a check for a premium payment to Guardian, which Guardian

5  accepted. (ECF No. 279-1 at 12; ECF No. 8).

6          On January 17, 2010, Robert Stonebreaker died.  (ECF No. 256-5 at 18).

7          On January 19, 2010, Wiegman reported the death of Robert Stonebreaker to Guardian

8  and, on behalf of Plaintiff, made a claim for the death benefits of the three policies.  (ECF No.

9  292-1 at 24).

10          On January 25, 2010, Barbara Werkheiser ("Werkheiser"), Guardian's chief claims

11  consultant, used funds from the cash value of the Robert Stonebreaker's whole life policy to

12  pay the outstanding premiums due on the term life policies. (ECF No. 279-1 at 23; ECF No.

13  256-5 at 3).

14          On February 12, 2010, Guardian received a "Law Enforcement Inquiry" letter from the

15  San Diego County Sheriff's Department.  (ECF No. 256-5 at 6).  On February 16, 2010,

16  Werkheiser had a telephone conversation with the Sheriff's Department and was informed that

17  Robert Stonebreaker's death had been ruled a homicide. *Id.*

18          On February 26, 2010, Werkheiser sent an email to Plaintiff's representative stating that

19  the "individual life claim is still outstanding." *Id.* at 10.  Werkheiser stated that Guardian had

20  "been aware that the manner of Mr. Stonebreaker's passing is considered a homicide [and] ...

21  prior to releasing payment of this claim, [Guardian] will require a statement from the Sheriffs

22  Department (on their letterhead) indicating the named beneficiary is not a suspect in the

23  passing of our insured." *Id.*  Werkheiser attached claim forms to this email. *Id.*

24          On April 1, 2010, Guardian contacted the Sheriff's Department to see if Plaintiff had

25  been cleared as a suspect. (ECF No. 263-1 at 15; ECF No. 256-4 at 5).  Guardian was advised

26  that Plaintiff had not been cleared as a suspect. *Id.*

27          On August 24, 2010, Werkheiser received a Claimant Statement form, W-9 tax form,

28  and a death certificate for Robert Stonebreaker with the cause of death listed as "PENDING."

1  (ECF No. 256-5 at 14-18; ECF No. 256-4 at 5).   Werkheiser contacted the Sheriff's

2  Department to see if Plaintiff had been cleared as a suspect. (ECF No. 263-1 at 17; ECF No.

3  256-4 at 5). Werkheiser states that she was advised by the Sheriff's Department that Plaintiff

4  "is still a suspect and unwilling to cooperate in the investigation at this point." *Id.*

5      On August 24, 2010, Werkheiser sent Plaintiff a letter informing Plaintiff that her claim

6  had been received. (ECF No. 256-5 at 19; ECF No. 256-4 at 5-6).  The letter also stated:

7      We are unable to proceed with our review of this claim until we receive the
following documents:

8

9      Original Finalized Death Certificate with statement from investigating agency indicating that the named beneficiary is not a suspect in the insured's passing.

10      Or

11      Statement from the investigating agency indicating that the named beneficiary is not a suspect in the insured's passing.

12  (ECF No. 256-5 at 19).

13      On November 11, 2010, Werkheiser contacted the Sheriff's Department to see if

14  Plaintiff had been cleared as a suspect. (ECF No. 256-5 at 24; ECF No. 256-4 at 6).

15  Werkheiser was advised that: "Pam Stonebreaker is still a suspect in the case. She will not

16  even talk to us now." *Id.*

17      On December 17, 2010, Plaintiff sent Guardian a copy of the final death certificate for

18  Robert Stonebreaker, dated November 12, 2010, which lists the cause of death as "homicidal

19  violence." (ECF No. 256-5 at 27-31).  On December 22, 2010, Werkheiser sent Plaintiff a

20  letter stating: "... we will require a statement from the investigating policy department advising

21  us that the named beneficiary is not a suspect in the passing of your husband." (ECF No. 256-

22  5 at 32).

23      On March 24, 2011, Werkheiser contacted the Sheriff's Department to see if Plaintiff

24  had been cleared as a suspect. (ECF No. 263-1 at 25-26; ECF No. 256-5 at 37).  Werkheiser

25  was advised by the Sheriff's Department that: "She is still number one suspect in my book!!!"

26  *Id.*

27      Plaintiff submits the deposition of Crews, a financial representative of Guardian, which

28  states:

Q.      As a financial representative of Guardian, are you authorized to make representations to Guardian insureds on behalf of Guardian?
A.      Yes.
...
Q.      – it was your understanding, after talking to The Guardian Home Office on January 18, 2010, that the Stonebreakers' Guardian policies were still in force; is that correct?
A. Correct.
...
Q.      Was it your understanding after talking to the Home Office representative of The Guardian on January 18, 2010, that the Stonebreakers' policies had not lapsed?
A.      That is correct.
...

(ECF No. 263-5 at 14-16).

Plaintiff submits the deposition of Wiegman, the Stonebreakers' financial advisor, which states:

Q. Mr. Wiegman, you testified that you had two conversations with Rod Crews shortly after Dr. Stonebreaker's death; is that correct?
A. Yeah.

Q. The first conversation was when you called Mr. Crews to inquire whether the Guardian policies were in force; is that correct?
A. Right.

Q. And that was within a day or two of Dr. Stonebreaker's death?
A. Right.

Q. And during that phone conversation, Mr. Crews told you that, based on the Guardian computer screen he was looking at, all three Guardian policies were in force as of that date; is that correct?
A. That's what he had said, yeah.
...
Q. And at that point, did Mr. Crews make a phone call or inquire of someone at the Guardian
home office? ...
A. That's my understanding.

Q. And then you had a subsequent conversation with Mr. Crews regarding his contact with someone at the Guardian's home office? ...
A. Correct.

Q. And did the - - did the second conversation with Rod Crews happen on the [same] day as the first one where you called to inquire about the policies?
A. It was either the same day or the next day.

Q. Okay. But during the second conversation, Mr. Crews told you that -- strike that. During the second conversation which occurred in or about January 19, 2010, Mr. Crews told you that, based on his conversation with someone at the Guardian home office, all three Guardian policies were in force as of that date; is that correct?

1    A. They said that based on their screen, they saw that the policies were in force.

2    Q. Okay. And both of these conversations that we've been referring to that you
     had with Mr. Crews took place on or about January 19, 2010; is that correct?
3    A. Correct.

4    Q. And then it was a later third conversation where the death claim was actually
     reported; is that correct?
5    A. Right.

6    *Id.* at 21-26.

7    Guardian submits the declaration of Werkheiser, Guardian's chief claims consultant,

8    who states:

9        ... 7. On January 20, 2010, I listened to Crews voicemail and responded with an
         e-mail to Mrs. Stonebreaker's insurance agent Aaron Wiegman ("Wiegman")
10       informing him that Dr. Stonebreaker's Term Policies had lapsed due to a non-
         payment of premiums.   I had determined that the policies had lapsed by
11       referencing regularly maintained files at The Guardian that track the payment of
         premiums. ...
12
         8. Despite the passing of Dr. Stonebreaker (the insured and owner of all The
13       Guardian Policies), I worked with other The Guardian employees to preserve the
         death benefits of Dr. Stonebreaker's Term Policies by applying funds from the
14       dividends earned in Dr. Stonebreaker's whole life Guardian Policy No. 1 to the
         unpaid premiums of the Term Policies.  As a result of these efforts on behalf of
15       Dr. Stonebreaker's beneficiaries, The Guardian reinstated the Term Policies to
         give Dr. Stonebreaker's beneficiaries the benefit of three policies with a total
16       death benefit of $2,000,000, instead of one whole life policy with a death benefit
         of $250,000. ... By the time of Dr. Stonebreaker's death, the Term Policies were
17       paid up only until the end of November, 2009.  The December, 2009 and
         January, 2010 premiums on the Term Policies were never paid before his death.
18       ...

19   (ECF No. 256-4 at 3-4).

20                        **CONTENTIONS OF THE PARTIES**

21   Guardian moves for summary judgment on Plaintiff's breach of contract claim, breach

22   of the implied covenant of good faith and fair dealing claim, and prayer for punitive damages.

23   Guardian asserts that Robert Stonebreaker's two term life insurance policies, totaling

24   $1,750,000, had lapsed due to non-payment of premiums. (ECF No. 292-1 at 2-14).  Guardian

25   states that it "does not raise a 'lapse defense'" to avoid paying benefits.  (ECF No. 279 at 6).

26   Guardian contends that "it voluntarily reinstated the two lapsed policies" and that evidence of

27   a lapse and subsequent reinstatement of the policies is relevant to "prove the Guardian's

28   reasonable 'good faith' conduct ... and to prove that the term policies *at the moment* of Dr.

1  Stonebreaker's death were not in force and therefore there was no contract *at the moment* of

2  death upon which Plaintiff can base her 'breach of contract' and 'bad faith' claims with respect

3  to the term policies." *Id.* at 9.  Guardian contends that it acted reasonably pursuant to the

4  insurance policies and did not unfairly interfere with Plaintiff's right to receive the benefits of

5  the insurance policies. (ECF No. 292-1 at 21-27).  Guardian contends that Plaintiff's breach

6  of contract claim regarding the interpleaded funds "must be dismissed because The Guardian's

7  interpleader has already been ruled appropriate by this Court." (ECF No. 256-1 at 18).

8      Plaintiff contends that Guardian breached the implied covenant of good faith and fair

9  dealing by "unreasonably delay[ing] payment of the policy benefits" and by conducting a

10  "biased and incomplete" investigation. (ECF No. 263 at 7). Plaintiff asserts that "all three

11  Guardian policies were in force at the time of [Robert Stonebreaker's] death." *Id.* Plaintiff

12  contends that Guardian was obligated to pay the benefits of the two term policies.  Plaintiff

13  contends that it is entitled to judgment as a matter of law on Guardian's "lapse defense." (ECF

14  No. 267-1).

15                  **DISCUSSION**

16      Summary judgment is appropriate if there is no genuine issue as to any material fact and

17  the moving party is entitled to a judgment as a matter of law. *See* Fed. R. Civ. P. 56(c).  The

18  moving party has the initial burden of demonstrating that summary judgment is proper. *See*

19  *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152 (1970). The burden then shifts to the opposing

20  party to provide admissible evidence beyond the pleadings to show that summary judgment is

21  not appropriate. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 324 (1986). "In considering

22  a motion for summary judgment, the court may not weigh the evidence or make credibility

23  determinations, and is required to draw all inferences in a light most favorable to the

24  non-moving party." *Freeman v. Arpaio*, 125 F.3d 732, 735 (9th Cir. 1997); *see also Anderson*

25  *v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).

26      To avoid summary judgment, the nonmovant must designate which specific facts show

27  that there is a genuine issue for trial. *See Anderson*, 477 U.S. at 256; *Harper v. Wallingford*,

28  877 F.2d 728, 731 (9th Cir. 1989).  A "material" fact is one that is relevant to an element of

a claim or defense and whose existence might affect the outcome of the suit. *Matsushita Elec.*
*Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The materiality of a fact is
determined by the substantive law governing the claim or defense. *See Anderson*, 477 U.S. at
252; *Celotex*, 477 U.S. at 322; *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).

## I.    Plaintiff's Claim for Breach of the Implied Covenant of Duty of Good Faith and Fair Dealing

Every contract imposes an implied duty of good faith and fair dealing. *See Egan v.*
*Mutual of Omaha Ins. Co.*, 24 Cal.3d 809, 818 (1979). The implied covenant of good faith and
fair dealing holds that "neither party will do anything which injures the right of the other to
receive the benefits of the agreement." *Schoolcraft v. Ross,* 81 Cal. App. 3d 75, 80 (1978)
(quotation omitted). In the insurance context, an insurer has the "responsibility to act fairly
and in good faith with respect to the handling of the insured's claim ...." *Chateau Chamberay*
*Homeowners Ass'n v. Associated Int'l Ins. Co.*, 90 Cal. App. 4th 335, 345 (2001) (quotations
and citations omitted). "A breach of the implied covenant of good faith and fair dealing
involves something beyond breach of the contractual duty itself, ... [b]ad faith implies unfair
dealing rather than mistaken judgment...."*Chateau Chamberay Homeowners Ass'n*, 90 Cal.
App. 4th at 345 (quotations and citations omitted). "[B]efore an insurer can be found to have
acted tortiously (i.e., in bad faith), for its delay or denial in the payment of policy benefits, it
must be shown that the insurer acted unreasonably or without proper cause." *Id.* at 346 (citing
*Dalrymple v. United Services Auto. Assn.*, 40 Cal. App. 4th 497, 520 (1995)). "The
reasonableness of an insurer's claims-handling conduct is ordinarily a question of fact."
*Chateau Chamberay Homeowners Ass'n*, 90 Cal. App. 4th at 347. The reasonableness of an
insurer's claims-handling conduct "becomes a question of law where the evidence is
undisputed and only one reasonable inference can be drawn from the evidence." *Id.*
"Determinations related to assessment of punitive damages have traditionally been left to the
discretion of the jury." *Amadeo v. Principal Mut. Life Ins. Co.*, 290 F.3d 1152, 1165 (9th Cir.
2002) (quoting *Egan,* 24 Cal. at 821).

In *United Investors Life Ins. Co. v. Grant,* the district court denied summary judgment

1  stating: "[I]t is ... undisputed that [the insurer] did no investigation of their own to help

2  determine [the beneficiary's] involvement, if any, in [the insured's] death prior to interpleading

3  the policy proceeds some fourteen months after the claim was initially submitted." *United*

4  *Investors Life Ins. Co. v. Grant,* Case No. 2:05-cv-1716-MCE-DAD, 2007 WL 521804 at *

5  2 (E.D. Cal. Feb. 15, 2007).  The district court held: "These circumstances ... present triable

6  issues of fact with respect to the reasonableness of United Investors' claims handling that make

7  this case not amenable to disposition on summary judgment." *Id.*  The case went to trial and

8  a verdict was rendered in favor of the beneficiary on the claim of breach of the duty of good

9  faith and fair dealing.  The insurer appealed to the Court of Appeals for the Ninth Circuit

10  which stated that "[t]he question of liability was properly presented to the jury." *United*

11  *Investors Life Ins. Co. v. Grant,* 387 Fed. App'x. 683, 687 (9th Cir. 2010).  The Court of

12  Appeals stated:

13  [The insurer] did not dispute coverage, it just worried about double
liability. [The beneficiary] proffered evidence that [the insurer] could
14  have dealt with that concern much more quickly, either through
investigation or by filing an action in interpleader earlier. She proffered
15  evidence that [the insurer] violated both its own unwritten policies and
California law, making its conduct unreasonable. Contrary to [the
16  insurer's] assertions, filing an interpleader action fifteen months after
receiving a claim and after minimal, pro forma investigation, where the
17  beneficiary was never arrested, was not reasonable as a matter of law.

18  *Id.* at 688; *but see Lee v. Crusader Ins. Co.,* 49 Cal.App.4th 1750, 1759 (1996) (finding an

19  insurance company's conduct reasonable as a matter of law, largely because the claimant was

20  arrested).

21       In this case, a financial representative of Guardian, Crews, was asked the following

22  question in a deposition: "Was it your understanding, after talking to The Home Office

23  representative of The Guardian on January 18, 2010, that the Stonebreakers' policies had not

24  lapsed?" (ECF No. 263-5 at 14).  Crews gave the following answer: "That is correct." *Id.*

25  Plaintiff's financial advisor, Wiegman, made a claim for the term policy benefits on January

26  19, 2010, and Guardian initiated a claims file for Plaintiff. (ECF No. 292-1 at 24).  Wiegman

27  stated in a deposition that he spoke with Crews shortly after Robert Stonebreakers' death and

28  that Crews told him that the policies were in "full force." *Id.* at 21-26. On February 6, 2010,

1  Guardian's chief claims consultant, Werkheiser, had a telephone conversation with the

2  Sheriff's Department and was informed that Robert Stonebreaker's death had been ruled a

3  homicide.  (ECF No. 256-5 at 6).  On February 12, 2010, Guardian received a "Law

4  Enforcement Inquiry" letter from the San Diego County Sheriff's Department. *Id.*  On

5  February 26, 2010, Werkheiser sent Plaintiff a letter, which stated: "... prior to releasing

6  payment of this claim, [Guardian] will require a statement from the Sheriff's Department (on

7  their letterhead) indicating the named beneficiary is not a suspect in the passing of our

8  insured." *Id* at 10. On April 1, 2010 and August 24, 2010, Guardian contacted the Sheriff's

9  Department to determine whether Plaintiff had been ruled out as a suspect.  (ECF No. 256-4).

10 On both occasions, Werkheiser was informed that Plaintiff had not been ruled out as a suspect.

11 *Id.*  On August 24, 2010, Werkheiser received from Plaintiff a Claimant Statement, W-9 tax

12 form, and a death certificate for Robert Stonebreaker, with the cause of death listed as

13 "PENDING." (ECF No. 256-5 at 14-18; ECF No. 256-4 at 5).  Werkheiser, in her response,

14 told Plaintiff that before the claim could proceed, a statement was required from the

15 "investigating agency indicating that the named beneficiary is not a suspect in the insured's

16 passing." (ECF No. 256-5 at 19).  On November 11, 2010, Werkheiser again contacted the

17 Sheriff's Department, and states that she was informed that: "Pam Stonebreaker is still a

18 suspect in the case. She will not even talk to us now." (ECF No. 256-5 at 24; ECF No. 256-4

19 at 6).   On December 17, 2010, Guardian received a copy of the final death certificate for

20 Robert Stonebreaker, dated November 12, 2010, indicating that the cause of death was

21 "homicidal violence" (ECF No. 256-5 at 27-31).  On March 24, 2011, Werkheiser contacted

22 the Sheriff's Department and was told that Plaintiff had not been cleared as a suspect.  (ECF

23 No. 256-5 at 32).

24        On October 5, 2011, Guardian deposited a check with the Clerk of the Court as "the

25 benefits payable under life insurance policies issued by [Guardian] on the life of Robert

26 Stonebreaker." (ECF No. 121 at 2).  Guardian is not asserting a "lapse defense" to avoid

27 paying the benefits of the two term policies.  Guardian is proffering evidence of a lapse to

28 show that it did not breach its duty of good faith and fair dealing in its handling of Plaintiffs'

claim to the two term policies. The Court concludes that evidence of a policy lapse may be relevant in determining whether Guardian "acted unreasonably or without proper cause," *Chateau Chamberay Homeowners Ass'n*, 90 Cal. App. 4th at 346; however, Guardian is not entitled to summary judgment on Plaintiff's claim for breach of the implied covenant of good faith and fair dealing based solely upon evidence of its conduct regarding lapse or on grounds that no contract existed regarding the term policies.

In this case, Guardian did not file an interpleader until April 22, 2011, approximately fifteen months after Wiegman made a claim to the benefits on Plaintiff's behalf; there was a delay of approximately eight months after Plaintiff submitted a Claim Statement on August 24, 2010 before Guardian filed an interpleader. (ECF Nos. 292-1 at 24; 17). Guardian did not deposit the interpleaded funds with the Court until October 5, 2011, approximately twenty-one months after Wiegman made a claim to the benefits and fourteen months after Plaintiff submitted a Claim Statement. (ECF Nos. 292-1 at 24; 121 at 2). There is no indication in the record that Plaintiff was arrested or charged in connection with the death of Robert Stonebreaker. Construing the facts in the light most favorable to Plaintiff, the Court finds that more than "one inference can be drawn from the evidence" of Guardian's conduct in this case. *Chateau Chamberay Homeowners Ass'n*, 90 Cal. App. 4th at 346. The Court concludes that issues of material fact exist as to whether Guardian reasonably investigated Robert Stonebreaker's death and whether there was an unreasonable delay before the interpleader was filed. *Id.* (explaining that the question of whether an insurer breached its duty to investigate "is ordinarily a question of fact" and only becomes a question of law "where but one inference can be drawn from the evidence"); *see also United Investors Life Ins. Co.*, 387 Fed. App'x at 687-88 (finding a fourteen-month delay before filing an interpleader with no independent investigation into the cause of death to be unreasonable) (quotations and citation omitted); *Paulfrey v. Blue Chip Stamps*, 150 Cal. App. 3d 187, 196 (1983) ("[W]hether an insurer breached its duty to investigate ... [is] a question of fact to be determined by the particular circumstances of each case"). The Court concludes that there is an issue of material fact as to whether the evidence supports an award of punitive damages in this case. Guardian is not

1  entitled to summary judgment on Plaintiff's claim for breach of the implied covenant of good

2  faith and fair dealing or on Plaintiff's prayer for punitive damages.

3  **II.    Plaintiff's Claim for Breach of Contract**

4  Guardian seeks summary judgment on Plaintiff's breach of contract claim on the

5  grounds that "Guardian's interpleader has already been ruled appropriate by this Court." (ECF

6  No. 256-1 at 18).

7  "An insurer does not breach an insurance contract when it retains a good faith belief that

8  it faces the possibility of competing claims and thereby interpleads the disputed funds with a

9  court of law." *Maddux v. Philadelphia Life Ins. Co.*, 77 F.Supp.2d 1123, 1129 (S.D. Cal 1999)

10  (granting Defendant's motion for summary judgment on Plaintiffs' breach of contract claim

11  after an interpleader filed by Defendant was found to be appropriate); *see also Minnesota Mut.*

12  *Life Ins. Co. v. Ensley,* 174 F.3d 977 (9th Cir. 1999).

13  The Court has found that Guardian filed an appropriate interpleader. (ECF No. 212).

14  The Court concludes that Guardian did not breach the insurance contract. *See Minnesota Mut.*

15  *Life Ins. Co.,* 174 F.3d at 981 ("In light of [Defendant's] good faith belief that it faced the

16  possibility of multiple claims, ... [Defendant] satisfied its obligation under the contract by

17  instituting the interpleader action"). Guardian is entitled to summary judgment on Plaintiff's

18  claim for breach of contract.

19  **CONCLUSION**

20  IT IS HEREBY ORDERED that the Motion for Summary Judgment (ECF No. 256)

21  filed by Defendant Guardian is GRANTED in part and DENIED in part. The Motion for

22  Summary Judgment on Guardian's Lapse Defense (ECF No. 267) filed by Plaintiff Pamela

23  Stonebreaker is DENIED on the grounds that Guardian has not asserted a lapse defense to

24  dispute coverage.

25

26  DATED: ___9/21/12___

27  WILLIAM Q. HAYES
    UNITED STATES DISTRICT JUDGE

28